Case 04-74091. Ismail Ayoub Putros v. Michael B. Mukasey is now up for argument. Mr. Nelson, we'll hear you again. Thank you. You'll probably be tired of me after this morning's work. Not at all. We're delighted to enjoy your company. We are facing many of the same issues in this case that we faced in the last case. Basically, the board once again hunted and left this court to decide credibility. Now, it's interesting that the judge only cited basically four reasons for which, or even less than that, for which he did not believe the respondent. And we've addressed them individually. And when you look at each of them, they simply don't withstand scrutiny. Substantial evidence doesn't support the judge's negative credibility finding. For example, the fact that my client was able to receive a medical degree in Iraq doesn't diminish his claim, as the judge suggests. The judge suggests that if my client, if the Ba'ath Party truly wanted to harm my client, then they would have never allowed him to become a doctor. But as my client credibly testified, there's a shortage of doctors. He's intelligent enough in order to become a doctor, and he was allowed to pursue that career. So by itself, or combined with the other reasons that the judge cited, it's simply not enough in order to find my client not credible. What are you asking us to do in this case, to send the case back to make a credibility determination? No, Your Honor. Because the board adopted the judge's decision, that is the board's position. It's the same as the judge. But as I understand it, the I.J. made no specific credibility finding. It's interesting, though, because he, but he listed three reasons why he had suspicions regarding. Yeah, but he didn't make a credibility finding, and I see this case is quite different from the prior one. I mean, frankly, I saw that he was troubled by a couple of things, but he didn't, I thought he refused to make a credibility determination. Well, if he was going to make one and he didn't make it, then I also thought he punted on past persecution. Well, I do agree, Your Honor. He is a very thoughtful and considerate and kind person, an intelligent judge, but I have to agree that he didn't finish the job in this case. But it isn't that he didn't finish the job. It's that he failed to make a critical finding, because your client's claim basically turns on his own testimony. Correct, Your Honor. Apparently. And he refused to say whether he believed and accepted his testimony or rejected it. He said there were some questions about it, but unlike the previous case where the administrative judge explicitly said, I don't find this witness's testimony credible, we don't know what finding he would make in this case, do we? If he had to make a finding tomorrow on whether the doctor's testimony was credible, we don't know what he would say, do we? I agree, Your Honor. And therefore, why isn't the appropriate disposition, if this can't stand, to send it back to the immigration judge to make a credibility determination and then on the basis of that determination decide the case? Well, we have quite a bit of authority that if the I.J. doesn't make a credibility finding, we assume credibility, so. Yes, Your Honor. I was going to say we've got a pretty good case right on point in Lopez that says if the I.J. isn't going to do it, we assume it, and the record is clear. Now we're only going to change conditions. Yeah. Correct. And whether the petitioner suffered past persecution, which we believe that he did, thereby shifting the burden to the government. Yes. Frankly, if he made no finding, the record is pretty clear. He did find past persecution. We presume it and go forth. I agree, Your Honors. And I think that that is where the judge should have found, and in addition, I think he does have a humanitarian. The judge misapplied the law regarding humanitarian grants of asylum. Well, my worry, I guess, is the very point that my good friend here brings up. It seems to me that I have the Hanna case, which would suggest that I can assume persecution, but then I ought to send it back to make sure that that's what I need to do. Then I've got the Lopez case, which I think gives better credence to what we need to do. If the I.J. is going to punt and the BIA in this case did, in my book, did nothing to help in this situation, then it seems to me that I say the record presumes it. Then the government's got a job to do. They've got to come forth with individualized analysis as to why this is not an appropriate country qualifications for this particular individual. That's correct. And I also think, let's put this out in the open, when this court issues an order, obviously all the parties want to know what those new conditions are, and they should be made a part of the record, but it's beyond your authority to directly order you to do that. But I have seen, I think it was suggested in the Hanna case, but also in other unpublished decisions, excellent verbiage which says, listen, board, it would be wise, although we can't order it, for you to examine these different country conditions. And I think that is the appropriate order of this court, that he did suffer past persecution, but if the case needs to be updated to reflect the current conditions, then so be it. I guess it isn't in the record that the current position is, of the government, is that Christians get admitted. That's not in this record. It's not in this record. That's correct. But I suppose, we hate to do fool's errands, but I suppose if we send it back to the board, they will say current conditions are not so great for Christians. He's in. That's correct. And again, anecdotally, there are five days in this week. The first four days of my week I presented individual merits hearings in four Chaldean cases to three different immigration judges in San Diego. Once it was established that they were Christians, they were all granted with no appeal. Again, that's only anecdotally, but it's, as an officer of the court, I can tell you that that is true. But if we send this one back to the board and say, look at current conditions as they apply to this fellow, that's probably what we would do if we agree with you. I think that's an appropriate order. Let me ask you a question. You're representing now your particular client. What is the government's burden on changed conditions? They must prove that it's safe for the petitioner's return. Not that the same actors who persecuted the petitioner the first time are still there, but that in general it is safe to return. Well, is that our standard? I mean, when I was preparing cases, and I appreciate this is in Idaho, a long ways away from where you do, but whenever I had to prepare these cases, I always went, if I wanted to have a tort case for assault, there were elements that had to be proven. What elements has the government got to prove to meet their burden on country condition change, in your mind, on our precedent? Yes. Well, I guess we have to say that he has a reasonable fear, and the government has to show that he doesn't have a reasonable fear. And what is that they have to prove? Well, they would have to prove that it is safe. And those are the words in the regulations. And also in Mashiri, the Mashiri case which we've cited, which involved the Afghan native who lived in Germany, and she still feared return to Germany, and this court agreed with her fear. And I think it's interesting that if an Afghan native has a fear of return to a democratic European country, then clearly a Chaldean Christian from Iraq should have the same fear of not being safe if returned to Iraq. Wouldn't it be enough to prove that since the regime changed, there has been no persecution of Christians? Or would they have to show something more that not only there was no persecution of Christians, but that he wouldn't be an exception to that rule? I mean, it's not clear to me that at some point it seems to me you get into the situation where you're asking the government to prove something that's impossible to prove. I mean, I don't know how the government can prove that this one person didn't have a reasonable fear of prosecution because he was a Christian. Well, if the country reports offered, said Christians lived peacefully in a democratic country in Iraq, then obviously they would meet their burden. But the reports don't show that. And we merely need to show that one in ten chance to prove the well-founded fear. So I guess if you meld the word safe, which is found in the regulations with that well-founded fear, the government can just prove or meet its burden that it's safe to go back. Would it, in your view, be enough if the government showed that a high official of the present government said, we recognize that there's been some persecution of Christians under the past regime, but we now announce our policy of equal freedom of religion for everyone in this country, and anyone who does anything that would be viewed as persecuting Christians is going to be in trouble. Would that be enough? No. Why not? Yes. They have said that, in fact, that they do want to protect ethnic minorities. That's not enough. Well, what more do they have to show? Well, sure. The regulations are very specific. That if there exists a group that the government is unable or unwilling to control within the country, then the client or the petitioner meets his burden. I'm not talking about the petitioner. I'm asking what more, in addition to what I posed a hypothetical to you, and you said they've even said that, but that's not enough. And my question to you is, well, if that's not enough, what more does the government have to show? They would have to show that the current country reports, they would have to redact a third of the reports which say that terrorists are killing Muslims. I'm sorry, killing Christians in Iraq. That would have to be absent from the current country reports from the Department of State. They'd have to prove that no Christians are being killed in Iraq? No, it's not no Christians. It would be one in ten chance, I believe, that they would be harmed if returned. More than a nine out of a ten chance that he'd be safe if returned. Thank you. Thank you, counsel. Welcome back, Mr. Marsteller. Thank you, Your Honor. You didn't know this, but Mr. Marsteller came and gave us argument yesterday. May it please the Court. Eric Marsteller for the Attorney General. I'd like to really kind of focus the Court's attention. There's really only one issue that's properly before the Court right now, and that's the humanitarian asylum claim. The adverse credibility claim, as the Court noted, is not before the Court because the immigration judge did not make an adverse credibility finding. Therefore, we have to assume that Mr. Proutros' testimony was truthful, and we accept those facts as the facts of the case. Do you also accept that then there are no findings as to past persecution, so that he did have past persecution? That's correct, Your Honor. Thank you. The immigration judge in this case found that the country conditions in Iraq had changed to rebut the presumption of a well-founded fear. That presumption only arises with the showing of past persecution, so there would only have been a need to consider the changed country conditions if there was, in fact, a showing of past persecution. Let me ask you a question now. If we've come to that point, what is the government's burden of proof, we ask this of counsel, as to country conditions? What does the government need to show? The government has to show that the country conditions in Iraq have changed such that the alien no longer has a well-founded fear of persecution. What do they have to do here? As I read our case law in Lopez v. Ashcroft and Bourgeois v. the INS, they have to show that there is an individualized analysis of how the changed conditions would affect this petitioner's specific situation. And in both cases, they failed to apply the relevant facts in the profile to the specific threat. Now, if they have to analyze the fact of each petitioner's circumstances as applied to the changed conditions, then the generalized information is not enough. And as I read here, there was nothing more than a generalized information given to the IJ. So why don't I just send it back? I'll tell you why, Your Honor. Because the basis of this alien, Mr. Putros' fear, was that he had been harmed and persecuted by members of the Ba'ath Party. The country condition information showed that the Ba'ath Party had been stripped from power and was no longer allowed to – Ba'ath Party members were no longer allowed to hold positions of power. So the fact that the Ba'ath Party members are gone eliminates the source of his fear, at least according to the record before the court. And we believe that that is enough of an individualized analysis to show that this alien no longer has a well-founded fear of persecution. Then it seems to me your position must be that the government carries its burden by showing two things, that Hussein and his government have been ousted and that the Ba'ath Party no longer is functioning. That's correct, Your Honor. That's all. On this record, we believe that. Then you also seem to be rejecting the notion that it has to be an individualized application of those general principles to this particular individual. Now, that may be, as I was suggesting to your opponent, that may be impossible to prove. I don't know. We believe that that generalized information was sufficient to support the individualized analysis that the immigration judge gave. Well, if you are right, if that's all you have to prove, then it follows that none of these people is entitled to asylum because, in every case now, Hussein is out, as is the Ba'ath Party. However, Your Honor, the Hana case, which this Court issued last year, shows that the Court must also take into consideration, or that the agency generally must take into account, other sources of possible harm that could come to Christians. The problem here is that we can't really apply Hana because the record in this case is from 2003. So the only country report information we have is what harm happened to Catholic Chaldeans in 2003, and there's nothing in the record about that. The only source of harm in the record is based on the harm caused by the Ba'athist Party. We have no idea, do we, what sort of a record could be developed in 2008 if this case were remanded to the immigration judge. And that's correct, Your Honor. I mean, you read all these stories in the newspapers every day, what's going on in Iraq, all the commentators. We don't know what's going on. We don't know what the conditions really are there, do we? We don't know what would happen if he went back to Iraq. And that's true, Your Honor. A couple of points. First is that the regulations have a way to fix a problem like this, and that is for the alien to file a motion to reopen with the board. Generally there are time and numerical limitations on motions to reopen, but when it's based on a fundamental change in circumstances in the alien's country, then there is no time or numerical limitations to filing a motion to reopen. So throughout, at the entire time this case has been before this court, Mr. Poudros could have filed a motion to reopen with the board based on changed circumstances, and any new information that has arisen since the record closed in this case could have then been considered by the board in determining whether to reopen the case. Let me take one of the, I realize that you tried to put a basis as to where we were going on here and then argue about that, but it doesn't seem to me that the only reason that one could find him persecuted on account of would simply be because of not being a Ba'ath party. It seemed to me we'd have religion as one of those as well, because he talks in his stuff about being yelled at and beaten, especially in April of 78, called a dirty Christian, unfaithful to his country. There are times when he's also being beat up because he's working for the Kurds. So he has two different things that he's really going for. One is that he's part of the Kurdish Democratic Party, that he's working for them, that he's doing what he needs to do. And the second is that he's a Christian, and therefore he's unfaithful to his country for being a Christian, which are two different things in my mind, one being totally political Kurds against whoever was in and another being religious. Now, because the IJ didn't make any determination there, I've got to give him credit for whichever one he picks. Now, I don't think that the country information which was shown to the IJ by the government addresses all of those situations for an individualized analysis of his particular situation, as we relate to all the things that he talked about. Now, I can understand one can immediately jump to that if one's going to say the only reason he is persecuted is because he's in the Ba'ath Party. But I don't see that as all that he's alleging here. So, again, I'm back to this idea. The government has a burden as to an individualized analysis. And if the general conditions the government presents to the IJ don't ever get applied to him individually in his particular situation, for instance, one might be able to go to one place in one country and have no trouble, but one might go to another place in the same country and have quite a bit of trouble. And, therefore, here we are individualizing the profile. And as to the type of persecution that is done, that I don't think the government did here. So why not remand and say, do it again, IJ. Do it again and decide what's really going on. I think the principal reason the court shouldn't remand is I don't think the court has jurisdiction over this issue. Why? Because it wasn't exhausted before the board. The court only has jurisdiction over issues that the alien exhausted before the Board of Immigration Appeals. What did the board do? They summarily affirmed the IJ. But the board only addresses those issues that are presented to it. Well, and what was presented? The alien presented the adverse credibility and the humanitarian asylum to the board. The alien did not address anything about changed country conditions. It did not challenge the fact that, however, as you didn't say, counsel for the government just told me, unless I have a good credibility determination, unless I have an adverse or I have a determination that there was past persecution, and unless I get that past, then, the government's burden on changed conditions, I can't even get humanitarian. Well, actually, I think that that's not right, Your Honor. That's what your counsel said. And maybe let me just clarify what she said. This court has found that an alien can get humanitarian asylum even if there is no well-founded fear of persecution. The matter of Chen itself was a case from the Chinese Cultural Revolution where the case occurred before the board when there was no longer any fear of persecution based on the alien's Christianity. However, the board found that the persecution that he had suffered was so severe in terms of its duration and nature that it would be inhumane to return him to China. So you can get humanitarian asylum even if there's no well-founded fear of persecution. In the government's view, would he establish his case if he proved that today, in Iraq, there are gangs of armed Muslims who go around after Christians, and when they catch them, sometimes they'll just tell them they don't like them, and sometimes they'll beat them up, and there have been a few killings taking place. Would that be enough to establish, you think? Well, the problem there, Your Honor, is that's the type of information that can be presented to the board through a motion to reopen. I understand. Let's assume that information had been presented either to the board or the immigration. Would that be enough to carry as burden to establish the right to asylum? It's hard to say, Your Honor, because it's just... Well, why not? It may be, but that's just not part of the record here. I understand that. It's just a hypothetical, but what I'm trying to find out from you is why would you say that wouldn't be enough? If there was objective, reliable evidence that gangs of people were going after Christians, then that would likely be sufficient. For the immigration judge, we'd have to make a credibility determination and all that sort of thing. Let's assume it was all credible. Let's assume that evidence was found to be credible. Then that likely would be sufficient. But, again, that's not the record. It would be sufficient. It likely would be. Okay. My worry with you, Counselor, is this. As I read what the IJ said, he said, Removable as charged. Not established a reasonable possibility he would suffer harm. Did get to go to medical school, after all. His evidence of changed conditions was not as good as the government evidence. Make no findings as to credibility. Now, first of all, I think he's clear off base when he says his evidence of changed conditions is not as good as the government evidence. He doesn't have any burden on changed conditions. The government does. So to suggest that the alien bears a burden of proof on that is totally out to lunch in my book. So then I go to all of this stuff, and I still have a tough time saying that underneath this record, there is no way for me to talk about what the IJ needs to do on country conditions in order to get there. And, therefore, I ought to send it back and let him think about it. Now, if you can get me past that hurdle, I can get there. Because I don't even see getting to humanitarian asylum. Because he couldn't get through. He gave the wrong burden of proof for country conditions, first of all, and then we got to there. I think the most important thing, and let me restate this, is I don't think Your Honor can get to that hurdle. Because the alien just did not raise it in his brief to the board. And, therefore, the board would have had no reason to have considered the changed country. Why did he say that? That's the immigration case. The BIA didn't say anything. They summarily affirmed. Right. But the exhaustion requirement applies whether the board affirmed that opinion or not. The exhaustion requirement still applies. And so the board affirmed that opinion based on the arguments raised in the brief to the board. And that was not an argument raised in the brief to the board. There's a distinction that he didn't exhaust as clear. There's a distinction. His brief to the board and his brief to this court are very similar. On page 24 and 25 of the record and 26 and 27 of his brief, there's a distinct difference between the two. In his brief to this court, there's one paragraph where he discusses changed circumstances. There's no similar paragraph in his brief to the board. And that evidence is the fact that the country conditions issue was not raised. But, of course, when the board summarily affirms, that has the effect of making the opinion of the immigration judge the decision that we review. That's true, Your Honor. But you can still only review those issues that were exhausted. I think you've made that point. And we either agree with it or we don't. Thank you, Your Honor. We appreciate it. Thank you. You have, oh, no. You exhausted all your time. Thank you very much. Case 04-74091, Putros v. Mukasey, has now been submitted.
judges: Fletcher, Smith, Friedman